1

2

3

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12 FLORES, et al.,

Case No.: 3:11-cv-6619 JSC

13 Plaintiffs,

**ORDER RE: SUBJECT MATTER JURISDICTION**

14 v.

15 WELLS FARGO BANK, N.A., et al.,

16 Defendants.

17

18

19     Defendant Wells Fargo Bank removed this purported diversity action to this Court.

20 (Dkt. No. 1.) Now pending before the Court are Defendant's motions to dismiss and to

21 strike portions of Plaintiffs' complaint. (Dkt. Nos. 5, 7.) As explained at oral argument on

22 February 16, 2012, the Court has taken the motions under submission pending the parties'

23 participation in a settlement conference. (Dkt. No. 20.) However, as a preliminary matter,

24 the Court must address whether it has subject matter jurisdiction over this case. See Valdez

25 v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are

26 "obligated to consider *sua sponte* whether [they] have subject matter jurisdiction"). Because

27 the amount in controversy and diversity of citizenship requirements are met, the Court

28 maintains subject matter jurisdiction.

United States District Court
Northern District of California

**DISCUSSION**

The federal diversity jurisdiction statute provides that the "district courts…have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and where all parties to the action are "citizens of different states." 28 U.S.C. § 1332(a). Courts are to "[s]trictly construe the removal statute against removal jurisdiction" such that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

This case arises from Plaintiffs' default on a $767,505.00 loan. (Dkt. No. 1, p. 16.) The $75,000 amount in controversy requirement is therefore satisfied. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (noting that in actions that seek declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation). Accordingly, federal jurisdiction hinges on the parties' citizenship.

Plaintiffs are citizens of California. (Dkt. No. 1, Ex. A.) The citizenship of Wells Fargo, however, is less straightforward.[1] Wells Fargo's articles of incorporation state that its main office is in South Dakota (Dkt. No. 1, Ex. C), therefore it is a citizen of South Dakota. See Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006) (concluding that a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located"). Wells Fargo's principal place of business, however, is in California. (Dkt. No. 1, p. 3.) The question presented is whether a national bank such as Wells Fargo is a citizen of both the state in which its principal place of business is located *and* the state of its main office, when the two differ. If so, the parties are not diverse and the Court may not decide the case.

---

[1] Defendant NDeX West, a limited liability company, is a citizen of Delaware, Texas, Michigan, and Minnesota. See Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (holding that a limited liability company is a citizen of every state where its members are citizens). In any event, Wells Fargo contends, and Plaintiff does not dispute, that NDeX is not a proper defendant and has no obligation to participate in this action pursuant to Civil Code section 2924. (Dkt. No. 1 at 13.)

2

1    For federal diversity purposes, national banks are "deemed citizens of the States in

2   which they are respectively located."  28 U.S.C. § 1348.  In Schmidt, the Supreme Court

3   held that "a national bank, for § 1348 purposes, is a citizen of the state in which its main

4   office, as set forth in its articles of association, is located."  546 U.S. 303, 307 (2006).  In

5   doing so, the Court resolved disagreement among the courts of appeals regarding whether

6   national banks are "located" in every state in which they maintain branch offices.  Id. at 306.

7   After recognizing that "located" is not a word of enduring rigidity but rather gains its

8   meaning from context, the Court rejected the notion that national banks are located in every

9   state in which they operate branches.  Id.

10       The Court did not, however, resolve the question presented here: whether a national

11  bank is also "located" in, and therefore a citizen of, the state of its principal place of

12  business. Instead, the Court alluded to, but did not decide, the issue:

13

14      To achieve complete parity with state banks and other state-incorporated entities,
        a national banking association would have to be deemed a citizen of both the

15      State of its main office and the State of its principal place of business.  Congress
        has prescribed that a corporation "shall be deemed to be a citizen of any State by

16      which it has been incorporated and of the state where it has its principal place of
        business." 28 U.S.C. § 1332(c)(1).  The counterpart provision for national

17      banking associations, § 1348, however, does not refer to "principal place of
        business"; it simply deems such associations "citizens of the States in which they

18      are respectively located."  The absence of a "principal place of business"
        reference in § 1348 may be of scant practical significance for, in almost every

19      case, as in this one, the location of a national bank's main office and of its

20      principal place of business coincide.

21

22

23  Schmidt, 546 U.S. at 317 n. 9.  Because the location of Wells Fargo's principal place of

24  business and main office differ, this case presents a question the Schmidt Court had no

25  occasion to resolve.  For the following reasons, the Court concludes that section 1348 makes

26  national banks citizens only of the state of their main office and not also of the state of their

27  principal place of business.

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    **A. "Located" As Used In The National Bank Act**

2    First, in the Supreme Court's recent analysis of the term "located" in section 1348, the

3    Court first looked to how the term is used in the National Bank Act.  Schmidt, 546 U.S. at

4    313.  The Court noted that as it appears in that Act, "the term 'located'…has no fixed, plain

5    meaning."  Id.  At some places, the word "unquestionably refers to a single place: the site of

6    the banking association's main office."  Id. (citing 12 U.S.C. §§ 52, 55, 75, 182).  At others,

7    the word "apparently refers to or includes branch offices."  Id. (citing 12 U.S.C. §§ 36(j), 85,

8    92).  However, nowhere in the National Bank Act is the word "located" used to refer to a

9    national bank's principal place of business.  This omission counsels against construing the

10   term "located" to refer to a national bank's principal place of business.

11   **B. Schmidt Abrogated American Surety**

12   Second, the Court is not persuaded that the Ninth Circuit's 60 year-old decision in

13   American Surety Co. v. Bank of California, 133 F.2d 160 (9th Cir. 1943), requires otherwise.

14   There, the court interpreted the predecessor statute to the current section 1348 to determine

15   whether a national bank is located in every state in which it transacts business.  Id. at 161-62.

16   After a short discussion which analogized national corporations to national banks, the court

17   concluded that "[t]he trial court was right in holding that [the national bank] is a citizen only

18   of the state in which its principal place of business is located…"  Id. at 162.

19   American Surety cannot be reconciled with the Supreme Court's decision in Schmidt.

20   The American Surety court held that "[t]he trial court was right in holding that defendant is a

21   citizen *only* of the state in which its principal place of business is located, the State of

22   California."  133 F.3d at 162 (emphasis added).  In other words, American Surety held that

23   the principal place of business rule is the exclusive test for citizenship of national banks for

24   diversity jurisdiction purposes.  In Schmidt, in contrast, the Supreme Court interpreted the

25   same word—"located"—to mean that a national bank is a citizen of the state in which its

26   main office, as set out in its articles of association, is located.  546 U.S. at 307.  Thus,

27   Schmidt conflicts with American Surety.  Further, the American Surety analysis did not

28   consider the National Bank Act for examples of how "located" is used, as did the Supreme

4

United States District Court

Northern District of California

1    Court in <u>Schmidt</u>.  As explained above, an analysis of the Act demonstrates that it never uses

2    the term "located" to refer to a bank's principal place of business.  Therefore, <u>American</u>

3    <u>Surety</u> is no longer good law on this point.  <u>But see</u> <u>Rouse v. Wachovia Mortgage, FSB</u>,

4    2012 WL 174206 at *11 (C.D. Cal. 2012) (finding that "<u>Schmidt</u> Did Not Abrogate

5    <u>American Surety</u>"); <u>Guinto v. Wells Fargo Bank, N.A.</u>, 2011 WL 4738519 at *3 (E.D. Cal.

6    2011) (finding <u>Schmidt</u> to be "too slender a reed upon which to anchor a district court ruling

7    that the binding Ninth Circuit authority of <u>American Surety</u> has been abrogated.").

8         **C. Precise Jurisdictional Parity Is Not Required**

9         Third, the Court is not persuaded that because 28 U.S.C. § 1332(c)(1) makes state

10   banks and other corporations citizens of both their state of incorporation and the state of their

11   principal place of business, national banks should be treated the same.  <u>See</u> <u>Wells Fargo</u>

12   <u>Bank, N.A. v. WMR e-PIN, LLC</u>, 653 F.3d 702, 707 (8th Cir. 2011).  An examination of the

13   statutory history shows why.  Congress first authorized national banks in 1863, at which time

14   they could "sue and be sued in the federal district and circuit courts solely because they were

15   national banks, without regard to diversity, amount in controversy or the existence of a

16   federal question in the usual sense."  <u>Mercantile Nat. Bank at Dallas v. Langdeau</u>, 371 U.S.

17   555, 565-66 (1963).  In 1882, Congress eliminated "federal question" jurisdiction for

18   lawsuits involving national banks and aligned the federal courts' diversity jurisdiction over

19   national banks with that governing state banks.  The 1882 statute provided:

20

21        [T]he jurisdiction for suits hereafter brought by or against any association
          established under any law providing for national-banking associations…*shall be*
22        *the same as, and not other than*, the jurisdiction for suits by or against banks not
          organized under any law of the United States which do or might to banking
23        business where such national-banking associations may be doing business when
          such suits may be begun[.]
24

25

26   Act of July 12, 1882, § 4, 22 Stat. 163 (emphasis added).  This language placed national

27   banks "on the same footing as the banks of the state where they were located."  <u>Leather</u>

28   <u>Manufacturers' Bank v. Cooper</u>, 120 U.S. 778, 780 (1887); <u>see also</u> <u>Schmidt</u>, 546 U.S. at

5

United States District Court

Northern District of California

1 311 (noting that section 1348's predecessors "sought to limit…the access of national banks

2 to, and their suability in, the federal courts to the same extent to which non-national banks

3 [were] so limited").

4     In 1887, however, Congress replaced the 1882 jurisdiction provision and for the first

5 time used the "located" language that exists in the current section 1348.  The 1887 provision

6 read in relevant part:

7

8     [A]ll national banking associations established under the laws of the United States
    shall, for the purposes of all actions by or against them, real, personal, or mixed,

9     and all suits in equity, be deemed citizens of the states in which they are
    respectively located; and in such cases the circuit and district courts shall not have

10     jurisdiction other than such as they would have in cases between individual citizens

11     of the same state.

12

13 Act of Mar. 3, 1887, § 4, 24 Stat. 554-55.  In 1948, as part of the Judicial Code revision of

14 that year, Congress enacted section 1348 as it now exists.  The provision states, in pertinent

15 part, that "[a]ll national banking associations shall, for the purposes of all other actions by or

16 against them, be deemed citizens of the States in which they are respectively located."  28

17 U.S.C. § 1348.

18     Some courts have held that because Congress eliminated federal question jurisdiction

19 for national banks in 1882 in order to expressly create jurisdictional parity with state banks

20 and corporations, the "located" language should be interpreted to include a national bank's

21 main office and its principal place of business;  otherwise, a state bank could be a citizen of

22 two states while a national bank could only be a citizen of one.  See, e.g., McCrady v. Wells

23 Fargo Bank, N.A., 2011 WL 6009966 at *3 (C.D. Cal. 2011); WMR e-PIN, 653 F.3d 702,

24 716 (Murphy, J., dissenting).  There is nothing in the language of section 1348, however,

25 which requires such precise jurisdictional parity.

26     To the contrary, the 1882 statute's unambiguous statement that federal jurisdiction

27 over national banks "shall be the same as, and not other than" jurisdiction over state-

28 chartered entities was eliminated by the 1887 amendment.  See WMR e-PIN, 653 F.3d at 709

1   (noting that "the language that expressly established parity between national banks and state

2   banks was removed in 1887").  None of the subsequent iterations of the jurisdiction

3   provisions, including section 1348, contain analogous language that requires jurisdictional

4   parity.  Moreover, to the extent that jurisdictional parity matters, it exists generally, if not

5   precisely, when "located" in section 1348 is interpreted to refer only to the state of a national

6   bank's main office.  When so construed, section 1348 makes national banks citizens of one

7   state, whereas section 1332(c)(1) makes state banks citizens of—at most—two states.  Thus,

8   interpreting "is located" in section 1348 to refer only to a national bank's main office avoids

9   the "anomalous result" the Supreme Court worried about when it considered whether

10  national banks are citizens of every state in which they conduct business.  See Schmidt, 546

11  U.S. at 317 (noting that if Wachovia were a citizen of every state in which it conducted

12  business, it would be a citizen of 16 states).  Nor does this interpretation "severely constrict

13  national banks' access to diversity jurisdiction as compared to the access available to

14  corporations generally."  Id. (noting that making national banks citizens of every state in

15  which they conduct business would severely restrict their access to diversity jurisdiction).

16  To the contrary, a national bank will be a citizen of one state whereas a state corporation will

17  be a citizen of one or two states, depending on whether its state of incorporation and

18  principal place of business coincide.

19       Finally, 28 U.S.C. § 1332(c)(1), the statute stating that that state banks and

20  corporations are citizens of their principal place of business and their state of incorporation,

21  was enacted ten years after section 1348:  while the current section 1348 was enacted in

22  1948, section 1332(c)(1) was not enacted until 1958.  The most relevant time for determining

23  a statutory term's meaning is the time at which the statute is enacted.  MCI

24  Telecommunications Corp. v. American Tel. & Tel. Co., 512 U.S. 218, 228 (1994) (citing

25  Perrin v. United States, 444 U.S. 37, 42-45 (1979)).  In 1948, the time at which section 1348

26  was enacted, the principal place of business test for corporate citizenship did not exist within

27  the statutory framework;  indeed, it did not exist in 1882 when the National Bank Act was

28  amended to require that the citizenship of a national bank be the same as the citizenship of a

United States District Court
Northern District of California

7

United States District Court

Northern District of California

1 state bank. Prior to section 1332(c)(1)'s 1958 enactment, corporations were deemed citizens
2 only of the state in which they were incorporated, not the state of their principal place of
3 business. See Marshall v. Baltimore & Ohio Railroad Co., 57 U.S. 16 (How.) 314 (1853)
4 (holding that the citizenship of a corporation's shareholders determines corporate citizenship
5 and assuming that all of a corporation's shareholders are citizens of the corporation's state of
6 incorporation). This rule applied for over a century until section 1332(c)(1) was enacted.
7 See Hertz Corp. v. Friend, 130 S. Ct. 1181, 1187-90 (2010); United Steelworkers of Am. v.
8 R.H. Boulingy, Inc., 382 U.S. 145, 148 (1965).

9        To hold that the "located" language in section 1348 refers to a national bank's
10 principal place of business in addition to the state of its main office on the ground that
11 section 1332(c)(1) refers to principal place of business is to conclude that Congress intended
12 section 1348 to follow section 1332(c)(1). There is no evidence within section 1348 to
13 support that conclusion. To the contrary, that Congress adopted the principal place of
14 business test for state corporations in 1958 without similarly altering section 1348 suggests
15 that Congress did not intend section 1348 to include that criterion. See WMR e-PIN, 653
16 F.3d at 708; Moreno v. Wells Fargo, 2011 WL 6372637 at *4 (N.D. Cal. 2011). In short,
17 nothing in either section 1348 or section 1332(c)(1) suggests that the two provisions are
18 connected such that by amending one Congress effectively amends the other.

19 **CONCLUSION**

20        Based on the foregoing, the Court concludes that Wells Fargo is a citizen of South
21 Dakota and not of California. Because diversity of citizenship exists, this Court retains
22 subject matter jurisdiction over this case.

23        **IT IS SO ORDERED.**

24

25 Dated: March 12, 2012

26

27 _____

28 JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

8